Sherry L. SPARLING, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. ED 78757.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 12, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 26, 2001.

Sherry L. Sparling, St. Louis, MO, pro
se.

Jeremiah W. (Jay) Nixon, Attorney General, Kristi L. Simmons, Asst. Attorney
General, Cape Girardeau, MO, Attorneys
for Appellant.

SIMON, Judge.

The Director of Revenue (Director) appeals from the judgment of the Circuit
Court of St. Louis County reinstating the
driving privileges of Sherry L. Sparling
(Driver). Director contends the trial court
erred by setting aside the revocation of

Driver's license because its judgment was not supported by substantial evidence. Director asserts that Driver was arrested by a police officer who had probable cause to believe she was driving while intoxicated, and she refused to submit to a blood test. We affirm.

The facts are not in dispute. Driver's petition was submitted solely on the records of the Department of Revenue, which include: (1) Driver's Missouri Driver Record; (2) notice of revocation; (3) Alcohol Influence Report; and (4) Investigative Report. The record reflects that on October 20, 1999, at approximately 2:00 a.m., Officer Wilson of the Town and Country Police Department observed Driver's vehicle traveling at a high rate of speed and straddling the white line dividing two lanes in the road. Upon pulling Driver over and informing her of the traffic violations, Wilson detected a moderate odor of alcohol. According to Wilson's report, Driver admitted to consuming several alcoholic drinks. He requested that Driver participate in several field sobriety tests, and she complied. Although the Alcohol Influence Report indicates that Driver failed the "alphabet test," it is unclear whether she failed the other field tests. Wilson administered to Driver a portable breathanalyzer test (PBT) which indicated that she had consumed alcohol. At that time, Wilson arrested Driver for driving while intoxicated (DWI).

Wilson transported her to the Creve Coeur Police Station where he read her Missouri's Implied Consent Law, Section 577.041 RSMo 2000 (all further references herein shall be to RSMo 2000 unless otherwise indicated). Driver consented to a chemical test of her breath, which indicated she had a blood alcohol content (BAC) of .089. Wilson inventoried the contents of Driver's purse where he found a black canister containing a green leafy substance

and a "half burnt paper cigarette." Wilson believed both to be marijuana. After Driver informed Wilson that the last time she smoked marijuana was sometime that morning, Wilson requested that she submit to a chemical test of her blood, and she agreed.

Wilson transported Driver to St. John's Hospital to have the test performed. Once there, Driver was informed by the desk nurse that she would be billed for the test. Driver told Wilson that "she would not do it if she had to pay for it." Wilson reread the Implied Consent Law, and Driver told him that "she did not care." Wilson told her that he would "count it as a refusal," and Driver stated, "Go ahead and do it."

Director suspended Driver's driving privileges pursuant to Section 577.041 for refusal to submit to an alcohol/drug chemical test. The Commissioner made the following findings and recommendations, which were adopted and confirmed by the trial court: (1) Wilson had probable cause to arrest Driver for DWI or an alcohol related traffic offense; (2) Driver did not refuse to submit to a chemical test of her breath; and (3) the revocation shall be removed from Driver's driving record and her driving privileges be reinstated.

On appeal, Director contends the trial court erred in entering judgment for Driver because there is no reasonable theory supported by the evidence on which to base the judgment. Director asserts that the uncontradicted evidence shows not only that Wilson had probable cause to believe Driver was intoxicated while driving, but also that Driver refused to submit to a blood test.

■ In a proceeding under Section 577.041, the trial court is to determine: (1) whether the person was arrested; (2) whether the arresting officer had reasonable grounds to believe that the person

was driving while intoxicated; and (3) whether the person refused to submit to the test. *Hawkins v. Director of Revenue,* 7 S.W.3d 549, 551 (Mo.App. E.D.1999). "Reasonable grounds" is virtually synonymous with probable cause. *Id.* The trial court's judgment indicates that Officer Wilson had probable cause to arrest Driver for driving while intoxicated. Therefore, the issue that remains is whether Driver refused to submit to a chemical test of her breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of her blood.

Here, the record clearly indicates that Driver submitted to a breath test indicating she had a BAC of .089. However, due to Wilson's discovery of marijuana within Driver's possession, he asked her to submit to a chemical test of her blood. Although the chemical test of Driver's blood was not mentioned in the trial court's judgment, Director raises this second test on appeal.

■ Issuance of a driver's license is no more than a personal privilege; however, once granted, the license may not be revoked arbitrarily but only in the manner and on the grounds provided by law. *Knierim v. James,* 677 S.W.2d 322, 324–25 (Mo.banc 1984).

The pertinent portions of Section 577.020 provide:

1. Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 577.020 to 577.041, a chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood...:

(1) If the person is arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition;

\* \* \*

2. The implied consent to submit to the chemical tests listed in subsection 1 of this section shall be limited to not more than two such tests arising from the same arrest, incident or charge.

If a person should refuse to submit to such tests, Section 577.041 provides that the refusal may be used against the person and requires the Director to revoke that person's license upon receipt of the officer's sworn report indicating such refusal. Further, in our review of Chapter 577 we have not found a statutory provision requiring a person arrested to pay for the administering of the chemical test. However, Section 488.5334 (formerly Section 577.048 RSMo 1994) permits the court, in addition to the imposition of any penalties, to order a person convicted of a violation of Section 577 .010 (Driving while intoxicated) or Section 577.012 (Driving with excessive blood alcohol content) to reimburse the state or local law enforcement agency which made the arrest for costs associated with such arrest, which include the cost of any chemical test made pursuant to Chapter 577 to determine the alcohol or drug content of the person's blood.

■ According to the record, Driver submitted to a breath test resulting in a test result of .089 and agreed to take the blood test upon Wilson's request. Upon her arrival at the hospital, Driver was informed by the nurse that she would be billed for the test. It was only then that she asserted her refusal stating that "she would not do it if she had to pay for it." It is clear from the record that Driver was

not refusing to take the test but was merely refusing to pay for the test. Since payment for the administration of a blood test is not a requirement set forth in Chapter 577, in particular Sections 577.020 and 577.041, the trial court correctly found that Driver did not refuse to submit to a chemical test of her breath or blood.

Judgment affirmed.

LAWRENCE E. MOONEY, P.J. and SHERRI B. SULLIVAN, J., concur.